FILED
2022 JAN 31
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JAKI S.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>**Acting Commissioner of Social Security,**<br><br>　　　　　Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 2:20-cv-00681-JCB<br><br><br>Magistrate Judge Jared C. Bennett |

　　　　　Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Plaintiff Jaki S.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to a Period of Disability ("PID") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary in this case. Based upon the analysis set forth below, the Commissioner's decision is affirmed.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 23.

[2] ECF No. 12.

[3] 42 U.S.C. §§ 401-434.

**PROCEDURAL BACKGROUND**

Plaintiff alleges disability due to various physical and mental impairments. In March 2018, Plaintiff applied for a PID and DIB.[4] Plaintiff's application was denied initially[5] and upon reconsideration.[6] On October 4, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[7] Shortly thereafter, the ALJ issued a written decision denying Plaintiff's claim for DIB.[8] Plaintiff appealed the adverse ruling, and, on July 30, 2020, the Appeals Council denied her appeal,[9] making the ALJ's decision final for purposes of judicial review.[10] On September 28, 2020, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[11]

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal

---

[4] ECF Nos. 17-18, Administrative Record ("AR ___") 189-192.

[5] AR 99-102.

[6] AR 103-106.

[7] AR 28-65.

[8] AR 7-22.

[9] AR 1-6.

[10] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[11] ECF No. 2.

standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the

---

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[13] 42 U.S.C. § 405(g).

[14] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[17] 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. § 404.1520(a)(4).

other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[19]

At step three, the claimant must show that her impairment meets or equals one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[20] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[21]

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work."[22] "If the claimant is able to perform [her] previous work, [she] is not disabled."[23] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[24]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[25] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

---

[19] *Williams,* 844 F.3d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[20] 20 C.F.R. § 404.1525(a); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

[21] *Williams*, 844 F.2d at 751.

[22] 20 C.F.R. § 404.1520(a)(4)(iv).

[23] *Williams*, 844 F.2d at 751.

[24] *Id.*

[25] *Id.*

4

"whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[26] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[27] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[28]

## ANALYSIS

Plaintiff's argument on appeal is quite narrow. In essence, Plaintiff contends that the ALJ misinterpreted Social Security Ruling 96-9p ("SSR 96-9p) in rendering his decision against Plaintiff's disability claim. Plaintiff believes that this alleged misinterpretation had a real impact on her claim because it caused the ALJ to forego an individualized assessment of whether the jobs that the ALJ found that Plaintiff could perform in the national economy fit within Plaintiff's respiratory limitations. This, Plaintiff argues, is reversible error. However, Plaintiff is incorrect because even if the court assumes that the ALJ misinterpreted SSR 96-9p, the error was harmless.[29]

---

[26] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[27] 20 C.F.R. § 404.1520(a)(4)(v).

[28] *Id.*

[29] Additionally, for purposes of this decision, the court also hesitantly assumes that Congress authorized judicial review of the ALJ's compliance with SSR 96-9p. Candidly, the court seriously doubts that Congress authorized the judiciary to review, much less remand, an ALJ decision that fails to comply with an agency policy statement. By analogy, under the Administrative Procedure Act numerous courts have held that they can only enforce against an agency that which has the force and effect of law because "[a] binding policy is an oxymoron." *See, e.g., Vietnam Veterans of Am. v. Sec. of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988). Although Social Security cases are not governed by the Administrative Procedure Act, the judicial review provisions of the Social Security Act similarly provide that the judiciary's authority to review the Commissioner's decisions is limited to: (1) factual findings and (2) "*only*

The ALJ's alleged error was harmless because it has no effect on the outcome of Plaintiff's claim. A "harmless error" is a mistake that neither exercises a substantial influence on the outcome of the action nor causes the court "grave doubt" as to whether the error had such an effect.[30] The court first discusses the ALJ's alleged interpretive error of SSR 96-9p and then analyzes whether the purported error either exercised a substantial influence on the outcome of the action or caused the court to seriously believe that it did.

---

the question of conformity with [the Commissioner's] regulations and the validity of such regulations." 42 U.S.C. § 405(g) (emphasis added). This congressional limitation on judicial review is significant where, as here, the United States Supreme Court has clearly stated that Social Security Rulings "do not have the force and effect of law or regulation." *Cf., Vietnam Veterans of Am*, 843 F.2d at 537 (finding that even though agency policy was binding against its employees, as far as the court is concerned, "the agency remains free in any particular case to diverge from whatever outcome the policy statement or interpretive rule might suggest" because policy is not law). Thus, the Social Security's appellate tribunal or the Commissioner certainly can enforce Social Security Rulings against an ALJ's decision because, in the Executive Branch's world under Article II of the Constitution, such policies are binding. But in the judicial world (i.e., Article III), Social Security Rulings are not "binding" because a court a court lacks congressional authority to enforce a policy against the agency. To hold otherwise would mean that if an agency promulgated a regulation saying that its policies were "binding" on the agency, then all the agency's policies that it considered binding would have the force and effect of law even though those policies did not undergo the rigorous notice and comment rulemaking process under 5 U.S.C. § 553. This cannot be. An agency has the authority to enforce a policy as "binding" for its purposes, but a court cannot do so unless and until that policy receives the status of "law." Despite the foregoing jurisdictional misgivings, the court assumes, for purposes of this opinion only, that it can review the ALJ's compliance with a policy that clearly lacks the force and effect of law.

[30] *Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) (concluding that the ALJ's incorrect reference for the dates of the claimant's surgeries "was a mere scrivener's error and did not affect the outcome of the case"); *cf. United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009) ("A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect." (citations and quotations omitted)).

A. <u>The ALJ's Alleged Error</u>

SSR 96-9p is a policy interpretation that guides ALJs in assessing a claimant's ability to perform "other work" when the claimant's RFC allows him/her to perform only "sedentary" work.[31] Although SSR 96-9p recognizes that claimants whose RFC limits them to "sedentary" work have "very serious functional limitations," SSR 96-9p also recognizes that such claimants, depending on their background and/or education, are capable of doing different types of sedentary work, including skilled, semi-skilled or unskilled. SSR 96-9p focuses on the "approximately 200 separate unskilled sedentary occupations" that exist in the national economy for claimants who fall into the sedentary work category.[32] These approximately 200 unskilled sedentary occupations are found in Table 1 of SSR 96-9p.[33] In addition to these 200 unskilled sedentary occupations, SSR 96-9p recognizes that there may be skilled and semiskilled jobs "that an individual with an RFC limited to sedentary work can perform by reason of his or her education or work experience."[34]

Specifically relevant to this case, SSR 96-9p also recognizes that some claimants whose RFC limits them to sedentary work may suffer from conditions that preclude them from taking on a full range of that sedentary work.[35] When such circumstances exist, SSR 96-9p advises the ALJ on how to determine the occupations in which a claimant can engage despite having an

---

[31] ECF No. 24-1.

[32] *Id.* at 3 of 14.

[33] *Id.* at 4 of 14.

[34] *Id.* at 4-5 of 14.

[35] *Id.* at 5 of 14.

7

eroded capacity to undertake all sedentary work. To make this determination, SSR 96-9p counsels the ALJ to make an "adjudicative judgment regarding factors such as the type and extent of the individual's limitations or restrictions" and the extent to which those limitations have eroded the claimant's ability to perform the unskilled sedentary occupations in Table 1.

After informing an ALJ that an "adjudicative judgment" is required, SSR 96-9p conveniently provides guidance to the ALJ as to how to arrive at that adjudicative judgment.[36] SSR 96-9p clearly states, however, that the guidance it provides applies only to determining "the *unskilled* sedentary occupational base."[37] Consequently, the advice that follows in SSR 96-9p does not apply to "skilled" or "semi-skilled" work determinations.

When evaluating the unskilled occupations still available to a claimant who cannot perform a full range of sedentary work on Table 1, SSR 96-9p provides that an ALJ should consider nonexertional limitations and restrictions, among other factors.[38] Included among these nonexertional limitations are "environmental restrictions," which is where Plaintiff claims the ALJ erred.[39] As to these "environmental restrictions," SSR 96-9p provides that because some work environments may involve exposure to "odors or dust," the ALJ should make an individualized determination of the claimant's ability to handle odors or dust to determine which, if any, unskilled sedentary jobs fit the claimant's work abilities.[40]

---

[36] *Id.* at 7 of 14.

[37] *Id.* (emphasis added).

[38] *Id.* at 9 of 14.

[39] *Id.* at 11 of 14.

[40] *Id.*

8

Plaintiff alleges that the ALJ failed to undertake the individualized assessment of odors and dust on Plaintiff's ability to do the three occupations that the ALJ determined that Plaintiff could perform. Plaintiff argues that the ALJ's failure to undertake this individualized assessment occurred because even though the ALJ thoroughly recognized Plaintiff's respiratory impairments, the ALJ said that "pulmonary limitations" were not part of SSR 96-9p when evaluating "sedentary work."[41] In other words, Plaintiff argues: (1) Plaintiff's respiratory system is undisputedly compromised and, therefore, can be adversely affected by odors and dust; (2) respirating is a function of the pulmonary system; and (3) therefore, contrary to the ALJ's assertion, SSR 96-9p requires the consideration of pulmonary limitations when evaluating Plaintiff's ability to perform sedentary work. However, because the ALJ did not perform an individualized assessment of those pulmonary limitations (i.e., odors and dust) on Plaintiff's ability to perform the three occupations that the ALJ determined Plaintiff could perform, the ALJ failed to follow SSR 96-9p. And, had the ALJ performed the individualized assessment under SSR 96-9p, then he may have determined that Plaintiff was not able to perform any of the three occupations that the ALJ found the Plaintiff could perform. However, as shown below, even assuming the ALJ misinterpreted SSR 96-9p, the court finds that purported error harmless.

B.  The ALJ's Failure to Conduct an Individualized Assessment Under SSR 96-9p Is Harmless Error.

The ALJ's purported error is harmless because it neither substantially affects the outcome of Plaintiff's case nor causes the court to think that it might. The ALJ's uncontested finding that Plaintiff could perform the skilled sedentary job of Insurance Clerk renders the ALJ's alleged

---

[41] ECF No. 24 at 4.

error harmless. SSR 96-9p's requirement to consider the impacts of odor and dust at a job on a claimant is clearly limited to "*unskilled* sedentary" work.[42] Thus, by finding that Plaintiff could work at a *skilled* sedentary occupation, no individualized assessment of odors and dust was required under SSR 96-9p. Plaintiff challenges neither the ALJ's finding that Plaintiff could perform the skilled sedentary occupation of Insurance Clerk nor the finding that 111,381 jobs are available in the national economy for that occupation. That Plaintiff can perform one occupation in sufficient numbers in the national economy precludes a disability finding.[43] Therefore, even if this court were to exclude the two other unskilled sedentary jobs that the ALJ found that Plaintiff could perform for allegedly failing to comply with SSR 96-9p, there remains one job with sufficient numbers available in the national economy that Plaintiff can perform that does not require any individualized analysis for odors and dust under SSR 96-9p.[44] Thus, any failure on the ALJ's part to comply with SSR 96-9p has no impact on his finding that Plaintiff is not

---

[42] ECF No. 24-1 at 7 of 14 (emphasis added).

[43] *See, e.g., Bailey v. Astrue*, 739 F.Supp.2d 1365, 1382 (N.D. Ga. 2020) ("[T]hat the ALJ only identified one occupation is not fatal to the ALJ's decision because the regulations specifically contemplate that a significant number of jobs can be found even if the plaintiff can only perform one occupation.").

[44] Plaintiff's reply brief contends, for the first time, that the ALJ's misinterpretation of SSR 96-9p caused the ALJ to ask deficient hypotheticals to the Vocational Expert at the hearing. ECF No. 29 at 2. Although courts do not consider arguments raised for the first time in a reply brief, *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016), the argument fails even if the court were to consider it. The only basis Plaintiff asserts for asking the Vocational Expert a hypothetical that includes limitations based on dust and odors is SSR 96-9p. But where, as here, SSR 96-9p does not apply to a skilled occupation, any error in the hypotheticals based on a misreading of SSR 96-9 is harmless.

disabled, which renders the ALJ's purported error harmless. Given this basis that renders any error harmless, the court declines to address the merits of additional harmless error arguments.

### CONCLUSION AND ORDER

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED January 31, 2022.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge
